IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION


CARLTON BRANTLEY,                    *

        Plaintiff,                   *

                                     *
vs.
                                     *
                                              CASE NO. 4:06-CV-89(CDL)
MUSCOGEE COUNTY SCHOOL DISTRICT, *

        Defendant.                   *

_____     *

O R D E R

    This case arises from alleged racial discrimination by Defendant

Muscogee County School District against its employee, Plaintiff

Carlton Brantley.  Presently pending before the Court is Defendant's

Motion for Summary Judgment (Doc. 17).  For the following reasons,

Defendant's motion is granted.

BACKGROUND

    When examining the evidence in the light most favorable to

Plaintiff, the record supports the following:

    Defendant hired Plaintiff as a Masonry Mechanic II at the pay

grade of "I" in May of 1999.  Masonry Mechanics are employed within

the Plant Services division, and they generally make minor additions

and alterations to buildings, pour and finish concrete, and perform

brickwork.  In addition, Masonry Mechanics "[c]an be assigned other

duties as called upon to do by higher authority, not directly related

1

to [the Masonry Mechanic] job." (App. 19 & 20 to Def.'s Mot. for Summ. J.)

Soon after he was hired, Plaintiff developed a suspicion that his supervisors were disproportionately assigning heavy, manual labor tasks to black employees. In the fall of 1999, Plaintiff injured his back while performing one of these tasks. Plaintiff filed a workers' compensation claim, and Defendant paid for Plaintiff's medical treatment and allowed him sufficient leave time to attend his doctor's appointments. Plaintiff was also temporarily assigned to a light-duty position in the furniture shop while he recuperated from his injury. Plaintiff returned to full duty as a Masonry Mechanic in December of 2001.

In the summer of 2002, the former Director of Plant Services retired, and the division's new director, James Tanksley, reorganized the division.[1] By this time, the demand for skilled masonry work had decreased, but the demand for concrete work was high. Consequently, the Masonry Mechanics were called upon to do more physical labor, including increased concrete pouring. Plaintiff was particularly unhappy with the increase in concrete pouring assignments, since

---

[1]Under this new system, Plant Services personnel were divided into different working teams. Plaintiff works as part of the Composite Maintenance Team, which performs heavy and specialized maintenance throughout the school district. The team is comprised of personnel from a variety of trades, ranging from locksmiths to heavy plumbers. Floyd Jordan, who is white, is Plaintiff's direct supervisor under this format. Tanksley is black, and he is Jordan's direct supervisor. Myles Caggins, who is also black, is Tanksley's direct supervisor, and he reports directly to the superintendent of schools, who in turn reports to the elected Muscogee County School Board.

concrete work had ordinarily been relegated to the grounds crew.[2] On September 1, 2003, Plaintiff wrote to the Chief of Operations and Facilities, Myles Caggins, to complain. Plaintiff specifically noted that the additional tasks to which he was assigned caused "undue strain" on his back requiring him to "schedule another epidural procedure as an outpatient." (App. 24 to Def.'s Mot. for Summ. J.)

Because Plaintiff indicated that he was again seeking medical treatment for a work-related back injury, Caggins instructed Tanksley to assign Plaintiff to a light-duty position in the plans and blueprint area (the "CAD room").[3] After Plaintiff was notified of his transfer, he became upset and immediately requested reinstatement in his original position as Masonry Mechanic. Tanksley informed Plaintiff that until Plaintiff received full clearance from his treating physicians, Plaintiff would remain on light duty. Plaintiff suffered no reduction in pay as a result of this temporary transfer, and he received good performance evaluations and normal pay increases throughout his tenure on light duty. Plaintiff also received additional training, at Defendant's expense, to help him become more proficient in the CAD room.

---

[2]Plaintiff did not believe that his job as a Masonry Mechanic involved pouring substantial amounts of concrete, although the basis for this belief is unclear, since his job description specifically lists "[p]ours and finishes concrete" as a job duty. (App. 19 & 20 to Def.'s Mot. for Summ. J.)

[3]It also appears undisputed that Plaintiff's workers' compensation claim for his original back injury was still pending at this time. (Def.'s Statement of Material Facts ¶ 6; Pl.'s Statement of Material Facts ¶ 5.)

The record reflects that one of Plaintiff's treating physicians released him to his usual duties in October of 2003, but Plaintiff was not immediately reassigned to Masonry at this time. (Attach. 12 to Pl.'s Resp.)   In January of 2004, however, Tanksley received notification from one of Plaintiff's doctors explaining that Plaintiff was undergoing lumbar decompression therapy and could not perform any exercise or lifting.  Tanksley decided this restriction would prevent Plaintiff from performing his Masonry duties and determined that Plaintiff would remain in the CAD room until (1) Defendant received a "doctor's statement of release to return to work with no restrictions" or (2) Plaintiff could identify "a trade or field that [he was] qualified to perform" into which he could be reassigned. (App. 26 to Def.'s Mot. for Summ. J.)

By April of 2004, Defendant received notice that both of Plaintiff's doctors cleared him for return to his usual duties.  On April 14, 2004, Tanksley attempted to return Plaintiff to the Masonry department, but with no work-related restrictions.  Plaintiff was concerned by Tanksley's decision because Plaintiff believed that Tanksley had a "personal vendetta" against him. (App. 29 to Def.'s Mot. for Summ. J.)   Plaintiff also thought he was still under doctor's orders to abide by certain work restrictions, which were not mentioned by Tanksley. (*Id.*)  Plaintiff therefore returned to his doctors for further explanation of his work restrictions.  On April 19, 2004, one of Plaintiff's treating physicians clarified his previous release of Plaintiff, noting that Plaintiff needed to

4

"continue his therapy as recommended" which therefore "implies that he maintain" his work-related restrictions. (App. 30 to Def.'s Mot. for Summ. J.) Tanksley construed this letter to mean that Plaintiff's light-duty assignment should be continued, and Plaintiff was again assigned to the CAD room pending completion of his treatment.[4]

On May 27, 2005, Plaintiff filed his first EEOC charge, alleging that he was discriminated against because of his race when he (1) was denied the proper wage upon hiring and (2) was removed from Masonry in September of 2003. On August 2, 2005, Plaintiff filed a second EEOC charge essentially restating and elaborating on his original claims. On August 4, 2005, Plaintiff filed an amendment to his May 27th charge which also elaborated on his original claims.

Tanksley acknowledged that he received notice of these charges, and in mid-August of 2005, Tanksley again attempted to reassign Plaintiff to Masonry; Plaintiff again "expressed concern over Mr. Tanksley's role in making a decision that affected [him]." (App. 33 to Def.'s Mot. for Summ. J.) In addition, Plaintiff could not understand why he was being reassigned to Masonry while he was still under the same work restrictions that precipitated his original

_____

[4]Tanksley avers that after he received clarification of Plaintiff's work restrictions, he met with Plaintiff and Caggins to discuss the situation. Tanksley recalls that during this meeting, Plaintiff "protested his reassignment from the CAD room." (Tanksley Aff. ¶ 9., Aug. 15, 2007.) Tanksley admits that "I did not understand what Mr. Brantley wanted to do in his employment at that time, because he protested both his move to the CAD Room as well as my attempts to reassign him back to his masonry position." (*Id.* ¶ 10.)

assignment to the CAD room. (*Id.*) On August 18, 2006, Plaintiff filed another EEOC charge alleging that the decision to reassign Plaintiff to Masonry was made "without any medical documentation from my doctor modifying or lifting my restrictions" and that the reassignment was "in direct violation of my work restriction and places my health in jeopardy." (App. 7 to Def.'s Mot. for Summ. J.) Plaintiff also asserted that he believed the reassignment was retaliatory. (*Id.*)

The parties agreed to have Plaintiff's medical condition reevaluated before reassigning him to Masonry, and the evaluation was completed near the end of August. At this time, Plaintiff informed Tanksley that he wished to remain in the CAD room. However, the CAD room was not equipped to have two full-time workers on a permanent basis, and Masonry was understaffed at least in part because Plaintiff was working in the CAD room. Tanksley was also being criticized by other workers who felt that Tanksley was favoring injured black workers by permitting them to remain in favorable light-duty assignments.[5] Accordingly, after receiving documentation from Plaintiff's physicians indicating that Plaintiff could work in Masonry as long as he abided by his work restrictions, Tanksley again

---

[5]Tommy Griffin, an injured roofer, actually filed an EEOC complaint alleging race discrimination because injured white employees were not receiving favorable light-duty assignments but injured blacks were. (App. 48 to Def.'s Mot. for Summ. J.) The EEOC found cause to believe that Defendant's black employees were being treated more favorably than the white employees because black employees were permitted to transfer to light duty when injured. (App. 49 to Def.'s Mot. for Summ. J.)

reassigned Plaintiff to Masonry in December of 2005. This time, Tanksley made clear that Plaintiff was to work within his prescribed restrictions.[6] Tanksley further accommodated Plaintiff by assigning him to a "helper" position, meaning that Plaintiff and a co-worker would be given tasks usually handled by only one Masonry Mechanic. In March of 2006, Plaintiff filed another EEOC complaint, alleging that his December 2005 reassignment to Masonry was discriminatory and retaliatory.

Plaintiff's final EEOC charge stems from an incident where Plaintiff complained that Defendant was discriminating against him by installing a global positioning system ("GPS") in his work van. After Plaintiff complained of this conduct to a school board member, Defendant instructed its supervisors to discuss the GPS installation program with its employees. The supervisors were to explain that GPS was being installed in each Plant Services vehicle as soon as practicable. Plaintiff's supervisor, Floyd Jordan, discussed an e-mail relaying this information with Plaintiff and asked Plaintiff to acknowledge receipt of the information by signing a copy of the e-mail. Plaintiff refused to sign the e-mail because it was not an official memorandum. An argument ensued between Jordan and Plaintiff which ultimately resulted in the issuance of a written reprimand to

---

[6]Specifically, Tanksley informed Plaintiff that he was not to engage in repetitive bending or stooping, strenuous manual labor, and tasks requiring extensive pushing and pulling or lifting over fifty pounds. (App. 37 to Def.'s Mot. for Summ. J.) These restrictions appear to fit within the work restrictions prescribed by Plaintiff's doctor. (See App. 36 to Def.'s Mot. for Summ. J. (indicating that Plaintiff had a 2% impairment rating and that he was not to lift in excess of 55 pounds).)

Plaintiff for failing to sign the e-mail and for insubordination. Plaintiff contends that the reprimand was in retaliation for filing previous EEOC charges against Defendant. (*See* App. 9 to Def.'s Mot. for Summ. J.)

Plaintiff sued Defendant on August 1, 2006, alleging that Defendant engaged in unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Plaintiff seeks "declaratory relief, injunctive relief, and damages to redress the deprivation of his rights by Defendant because of its discriminatory treatment of him based upon his race[.]" (Compl. ¶ 2.) Defendant seeks summary judgment on each of Plaintiff's claims.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of

material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff contends that he was treated differently than his similarly-situated white counterparts in various aspects of his employment and that he was retaliated against for complaining of this discrimination. Defendants argue that most of Plaintiff's claims are time-barred. For the remaining timely claims, Defendant contends that Plaintiff has failed to present sufficient evidence to establish

a prima facie case of discrimination or retaliation. For the following reasons, the Court concludes that Defendant is entitled to summary judgment on each of Plaintiff's claims.

## I. Disparate Treatment Claims

Plaintiff alleges that he was the victim of disparate treatment and was discriminated against in the following ways: (1) he was hired at the incorrect pay grade in 1999; (2) he was assigned to light duty in the CAD room after complaining of back pain in September of 2003; (3) he was not promoted to Masonry Mechanic III in January 2004; (4) he was denied a pay upgrade as late as March of 2005; (5) he was denied a transfer from the CAD room back to Masonry as late as March of 2005; and (6) he was reassigned from the CAD room back to Masonry in December of 2005. Each of these claims fails as a matter of law.

### A. Time-Barred Claims

First, in order to survive summary judgment on his disparate treatment claims, Plaintiff must establish that his claims were presented to the EEOC within statutorily-mandated time limits. Title VII requires a charge of discrimination to be filed with the EEOC within 180 or 300 days of the date the alleged discriminatory incident "occurred." 42 U.S.C. § 2000e-5(e)(1). In Georgia, a non-deferral state, EEOC charges generally must be filed within 180 days. *See, e.g., Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003). "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Thus, Plaintiff "lose[s] the

ability to recover for" any discrete act of discrimination that happened more than 180 days prior the date he filed the corresponding EEOC charge. *Id.*

### 1. Failure to Promote

Plaintiff's first disparate treatment claim is that Defendant denied Plaintiff a promotion to Masonry Mechanic III. Plaintiff's failure to promote claim is clearly time-barred. Defendant's failure to promote Plaintiff was a "discrete act" of alleged discrimination that occurred in January of 2004. *See Morgan*, 536 U.S. at 114 (defining "discrete acts" to include "termination, failure to promote, denial of transfer, or refusal to hire"). Plaintiff did not file his earliest EEOC charge until May 27, 2005. Because Plaintiff's EEOC charge was filed more than 180 days after the allegedly discriminatory failure to promote, Plaintiff's claim is time-barred. *See Morgan*, 536 U.S. at 110. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.[7]

### 2. Original Assignment to CAD Room

Plaintiff next alleges that his initial assignment to a light-duty position in the CAD room was discriminatory. This claim, too, is time-barred. Plaintiff avers that he was "pulled" from his

---

[7]Although he filed at least five separate EEOC charges, Plaintiff never raised his failure to promote claim before the EEOC. Plaintiff's failure to promote claim would also be barred on that basis. *See, e.g., Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

Masonry position on September 17, 2003. (Compl. ¶ 19.) However, Plaintiff did not raise this claim before the EEOC until May 27, 2005, when he filed his first EEOC complaint. Because Plaintiff's transfer to the CAD room was also a discrete act of alleged discrimination not brought before the EEOC within 180 days of its occurrence, Defendant is entitled to summary judgment on this claim. *See Morgan*, 536 U.S. at 110.

### 3. Disparate Pay upon Hiring

Plaintiff next claims that he was denied the appropriate wage when he was hired in 1999. (Compl. ¶ 14.) Although this claim would ordinarily be time-barred, Plaintiff contends that each incorrect pay check issued by Defendant is a discrete act of discrimination that starts the EEOC charging period anew because Plaintiff claims "that his paychecks were issued pursuant to a system that is not neutrally applied." (Pl.'s Resp. 8.)

The U.S. Supreme Court recently addressed the timeliness of Title VII claims based on allegedly discriminatory pay-setting decisions in *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007). In *Ledbetter*, the plaintiff alleged that she received poor evaluations because her supervisor discriminated against her based upon her gender; these poor evaluations resulted in Plaintiff receiving less pay than she would have absent such evaluations. The plaintiff essentially claimed that each paycheck she received gave effect to her supervisor's previous acts of discrimination, and each

paycheck thus constituted a separate discriminatory employment practice which restarted the EEOC charging period. *Id.* at 2165-66.

The Supreme Court rejected the plaintiff's argument. The Court explained that "[a] disparate-treatment claim comprises two elements: an employment practice, and discriminatory intent." *Id.* at 2171. In order to raise a timely claim for disparate treatment, therefore, the plaintiff must demonstrate that the employment practice coincided with the discriminatory intent within the EEOC charging period. *See id.* at 2172. The Court "reject[ed] the suggestion that an employment practice committed with no improper purpose and no discriminatory intent is rendered unlawful nonetheless because it gives some effect to an intentional discriminatory act that occurred outside the charging period." *Id.*

The *Ledbetter* Court observed that the plaintiff made "no claim that intentionally discriminatory conduct occurred during the charging period or that discriminatory decisions occurring before that period were not communicated to her." *Ledbetter*, 127 S. Ct. at 2169. Because there was no evidence that the plaintiff's paychecks were issued with the requisite discriminatory intent, the Court determined:

> The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.

*Id.* at 2169. The *Ledbetter* Court was careful to distinguish the situation where "an employer adopts a facially discriminatory pay structure that puts some employees on a lower scale because of race" because in that situation, "the employer engages in intentional discrimination whenever it issues a check to one of these disfavored employees." *Id.* at 2173 (citing *Bazemore v. Friday*, 478 U.S. 385 (1986)).

In this case, Plaintiff was hired in 1999, and he knew he might be in the incorrect pay grade by October of 2002, when he officially requested his first pay review. (App. 42 to Def.'s Mot. for Summ. J.) Because the allegedly discriminatory decision was made and communicated to Plaintiff well before he filed his first EEOC complaint in 2005, Plaintiff's claim is time-barred. The fact that Plaintiff received paychecks allegedly based on discriminatory pay decisions that occurred prior to the beginning of the charging period cannot resurrect his claims. *See Ledbetter*, 127 S. Ct. at 2174 (prohibiting the plaintiff from bringing claims relating to past discriminatory pay decisions because "all [the plaintiff] has alleged is that [the defendant's] agents discriminated against her individually in the past and that this discrimination reduced the amount of later paychecks"). Plaintiff's contention that his case is controlled by *Bazemore* has no merit, as Plaintiff produces no evidence in support of his claim that Defendant's pay structure was facially discriminatory. *Cf. Bazemore*, 478 U.S. at 398 (observing that the plaintiffs "relied heavily on multiple regression analyses

14

designed to demonstrate that black were paid less than similarly situated whites").[8]

### B. Timely Claims

With respect to Plaintiff's remaining disparate treatment claims, Plaintiff must demonstrate that it is more likely than not that discrimination was the basis for the adverse employment actions at issue. *See Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000) ("There is no question that the plaintiff bears the ultimate burden of proving that discriminatory animus was a determinative factor in the adverse employment decision."). Because Plaintiff relies solely upon circumstantial evidence to support his claims, the Court applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See, e.g., Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986). In order to prevail under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination by establishing a prima facie case. *Goldsmith*, 996 F.2d at 1163. A plaintiff may establish a prima facie case of

---

[8]Plaintiff's Complaint also gives rise to a separate claim that Defendant's agents acted with discriminatory intent when they refused to upgrade his pay during the charging period while upgrading the pay of similarly-situated white employees. Although this claim is not time-barred, Defendant is entitled to summary judgment on it for the reasons discussed in section I.B.1. of this Order, *infra*.

disparate treatment by demonstrating that (1) he belongs to a racial minority; (2) he was subjected to adverse employment action; (3) the employer treated similarly-situated employees outside his class more favorably; and (4) he was qualified to do the job. *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam).

Once the plaintiff sets out a prima facie case, a presumption of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's conduct. *Goldsmith*, 996 F.2d at 1163. If the employer successfully rebuts the plaintiff's prima facie case, the presumption of discrimination is eliminated, and the plaintiff must then show that the reasons offered by the employer are pretextual, or present other evidence to show that discriminatory intent was more likely the cause of the employer's action. *Id.* If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's reasons are pretextual, the employer is entitled to summary judgment on plaintiff's claims. *Id.* For the following reasons, the Court finds that Plaintiff is unable to establish a prima facie case with regard to his remaining claims that are not time-barred.

*1. Refusal to Adjust Pay and Upgrade Position*

Plaintiff's first timely claim is that he was the victim of racial discrimination because he never received pay upgrades to which

he was entitled. Plaintiff alleges that he "continuously asked that his pay be adjusted and his position be upgraded." (Compl. ¶ 15.) According to Plaintiff's Complaint, the last denial of Plaintiff's request to correct his pay occurred in March of 2005—less than 180 days before the filing of his EEOC complaint on May 27, 2005. (*Id.* ¶ 16.) A fair reading of Plaintiff's Complaint thus gives rise to a timely disparate treatment claim for a discriminatory pay-setting decision. *See Ledbetter*, 127 S. Ct. at 2174 ("[A] freestanding violation [of Title VII] may always be charged within its own charging period regardless of its connection to other violations.") Plaintiff's claims still fail, however, because Plaintiff has not produced sufficient evidence that he was similarly situated to white employees who were treated more favorably.

"To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects . . . ." *Knight*, 330 F.3d at 1316 (internal quotation marks and citation omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis omitted).

Plaintiff proposes Tommy Griffin, a white male hired as a roofer, as a comparator who "received an equity adjustment in his salary, back pay and a job upgrade when he complained about not being in the right pay grade." (Compl. ¶ 17.) Griffin is not similarly situated to Plaintiff. First, Griffin received his pay upgrade in 2000, and thus Griffin's pay complaints were resolved by a different set of supervisors and human resources personnel. (*See* App. 43 to Def.'s Mot. for Summ. J. (David Jackson resolved Plaintiff's 2002 complaint); App. 47 to Def.'s Mot. for Summ. J. (Don Cooper resolved Plaintiff's 2004 complaint); App. 54 to Def.'s Mot. for Summ. J. (Tom Walters resolved Griffin's complaint).) Perhaps more importantly, however, Defendant contends that Griffin's pay upgrade was based upon an error made during Griffin's hiring. (App. 53 & 54 to Def.'s Mot. for Summ. J.) Specifically, Griffin was not given credit for his prior experience as a roofer. Plaintiff testified that although he had previously learned to do cement finishing work, he had no prior masonry experience. (Pl.'s Dep. 11:3-14:5, Apr. 16, 2007.) Plaintiff has therefore failed to produce sufficient evidence that he is similarly situated to Griffin. *See, e.g., Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (finding that no prima facie case existed when "[n]on-discriminatory differences just as readily explain the difference in treatment").

Plaintiff has simply failed to produce any evidence that Defendant treated similarly situated white employees more favorably.

Plaintiff maintains "that his compensation and ranking issues should be handled consistently with a similarly situated white employee." (Pl.'s Resp. 8.) Plaintiff gives no indication that his pay claim was handled any differently than any other employee's pay claim. Plaintiff requested, and Defendant performed, two separate investigations into Plaintiff's pay grade. Both investigations revealed that Plaintiff was properly graded. The fact that the investigations did not lead to Plaintiff's desired result does not show that Plaintiff was treated less favorably than white employees who requested the same investigations. Moreover, Plaintiff acknowledges that many black employees who requested upgrades received them. (*See, e.g.*, Pl.'s Dep. 160:5-165:15.) Plaintiff's failure to establish that he was treated less favorably than similarly situated employees outside his protected class is fatal to his otherwise timely pay claim.

### 2. *Denial of Transfer to Masonry*

Next, Plaintiff alleges that his doctors released him to full duty on October 8, 2003, that he requested to be returned to Masonry until March of 2005, and that these requests were denied.[9] (Compl.

---

[9]Despite Defendant's contentions to the contrary, this charge appears to be timely. A denial of transfer is a discrete act of discrimination that occurs on the date it happens, and thus an EEOC charge covering the discrete act must be filed within 180 days of the act's occurrence. *See Morgan*, 536 U.S. at 110. In his amendment to his May 27th EEOC charge, Plaintiff claims that he "continuously asked to be returned to full duty as recently as March 2005 which has been denied." (App. 5B to Def.'s Mot. for Summ. J.) Plaintiff's claim is for the allegedly discriminatory decision to deny his transfer, which appears to have been brought to the attention of the EEOC within the requisite charging period. (*See id.*)

¶ 21.) Plaintiff asserts that these denials were discriminatory. Defendant contends that Plaintiff has failed to produce evidence of a prima facie case of discrimination. Because Plaintiff has again failed to demonstrate that a similarly-situated white employee was treated more favorably, the Court agrees.

Plaintiff contends that two white employees assigned to the carpentry division, Mike Henderson and Greg Baskins, suffered more serious work-related injuries but were not required to take light-duty positions. However, Tanksley averred that before Henderson and Baskins returned to work, they obtained clearance from their physicians to perform their normal duties. (Tanksley Aff. ¶ 13.) In Plaintiff's case, one of his treating physicians indicated that Plaintiff should continue on light duty until his therapy was complete. (App. 26 to Def.'s Mot. for Summ. J.) Although the record contains evidence describing Plaintiff's own medical restrictions, Plaintiff also fails to "compare those limitations to those of any of the white co-employees" who were permitted to retain their jobs. *Davis v. Coca-Cola Bottling Co. Consol.*, No. 05-12988, 2008 WL 314962, at *9-10 (11th Cir. Feb. 6, 2008) (internal quotation marks and citation omitted) (affirming grant of summary judgment on light-work claims in part because plaintiffs could not establish the existence of similarly-situated comparators). Without such evidence,

---

Plaintiff's claim is therefore timely, at least with respect to any denial of transfer that occurred after November 28, 2004, 180 days prior to the filing of his first EEOC charge.

it is impossible to determine whether Plaintiff's alleged comparators are in fact similarly situated.[10]  Just as with Plaintiff's pay upgrade claims, "[n]on-discriminatory differences just as readily explain the difference in treatment," and therefore summary judgment is appropriate on Plaintiff's failure to transfer claims.  *See, e.g., Nix*, 738 F.2d at 1187.

### 3.  *Reassignment from CAD Room to Masonry*

Plaintiff finally claims that he was the victim of race discrimination because he was reassigned to Masonry in December of 2005 despite having the same work restrictions that Tanksley used to justify Plaintiff's CAD room assignment.  (App. 7 to Def.'s Mot. for Summ. J.)  Defendant contends that Plaintiff cannot establish a prima facie case of race discrimination.  The Court finds that Plaintiff has failed to produce evidence from which a reasonable fact finder could conclude that his reassignment to Masonry was an adverse employment action.  Therefore, Defendant is entitled to summary judgment on this claim.

Although a job reassignment is not usually considered an adverse employment action for purposes of Title VII, "a transfer to a

---

[10]The record also contains evidence to suggest that white employees with medical restrictions were treated similarly to Plaintiff.  Tommy Griffin, the same roofer who received a pay upgrade, was assigned to a light-duty position in carpentry after suffering an injury that prevented him from being on ladders.  (Tanksley Aff. ¶ 13.)  Griffin's EEOC charge states: "I was told that I could not return to work until I was released to full[] duty from my Doctor.  James Tanksley, Director, told me that he did not want to risk the possibility of me getting re-injured."  (App. 48 to Def.'s Mot. for Summ. J.)

different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) (citation omitted). The Court asks whether a reasonable person in Plaintiff's position would consider the employment action to be adverse. *Id.*

Viewing the record in the light most favorable to Plaintiff, it is at least arguable that Plaintiff's *original* assignment to the CAD room was adverse because (1) it allegedly prevented Plaintiff from accumulating Masonry experience that may have affected his promotion to Masonry Mechanic III; (2) Plaintiff often had little work to do in the CAD room, and believed that Defendant "sent [him] somewhere just to get [him] out of the way"; and (3) the CAD room supervisor submitted a notarized letter indicating that Tanksley instructed him to scrutinize Plaintiff's activities and that Tanksley wished to terminate Plaintiff because he considered Plaintiff to be "a troublemaker." (Pl.'s Dep. 75:14-24; Attach. 9 to Pl.'s Resp.) However, no such evidence exists with respect to Plaintiff's December 2005 assignment to Masonry. Plaintiff's own EEOC charges indicate that Plaintiff "continually asked" to return to Masonry and that Plaintiff believed he had been discriminated against because these requests had been denied. (*See, e.g.*, App. 5B & 6 to Def.'s Mot. for Summ. J.) Plaintiff also suffered no reduction in pay as a result of his reassignment to Masonry. In addition, Defendant has produced unrebutted evidence that Plaintiff was to abide by his work

restrictions while performing his Masonry duties. (*See, e.g.*, Tanksley Aff. ¶ 12; App. 37 to Def.'s Mot. for Summ. J.) Plaintiff simply cannot show that his accommodated return to Masonry—which he actively sought at least until March of 2005—seriously and materially altered the terms and conditions of his employment. *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239, 1244 (11th Cir. 2001)) ("[W]hen a reassignment involves no '*serious and material* change in the terms, conditions, or privileges of employment,' a court should not act as a 'super-personnel department' by questioning an employer's business judgment about where it assigns employees."). Plaintiff has failed to produce sufficient evidence from which a reasonable fact finder could conclude that his return to the job for which he was hired was an adverse employment action. Defendant is therefore entitled to summary judgment on Plaintiff's reassignment claims.

## II. Retaliation Claims

Plaintiff finally alleges that on at least two occasions, he was retaliated against for filing EEOC charges.[11]   First, Plaintiff

---

[11]Plaintiff also alleges that (1) he was forced to work from a van instead of a pickup truck in retaliation for filing his EEOC charges and (2) Defendant implemented a GPS tracking system on their vehicles in a discriminatory manner.   While these complaints appear to be timely, Plaintiff never raised these claims in any of his EEOC charges; moreover, the existing EEOC charges filed by Plaintiff cannot reasonably encompass these claims. *See, e.g., Sanchez,* 431 F.2d at 466.   Accordingly, to the extent that Plaintiff asserts Title VII claims based upon these instances of disparate treatment and/or retaliation, Defendant is entitled to

contends that his reassignment from the CAD room back to Masonry in December of 2005 was retaliatory. Second, Plaintiff claims that in February of 2007, he was given a written reprimand for insubordination in retaliation for filing his EEOC charges. Neither of these claims can survive summary judgment.

"To establish a prima facie case of retaliation under Title VII, the plaintiff must show (1) that []he engaged in statutorily protected expression; (2) that []he suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam) (internal quotation marks and citation omitted). It is clear that Plaintiff's EEOC charges constitute statutorily-protected expression. However, Plaintiff has not demonstrated that genuine issues of material fact exist with respect to the remaining elements of his prima facie case.

Defendant contends that Plaintiff was reprimanded for becoming verbally abusive to his supervisor, Floyd Jordan, during a meeting regarding GPS monitors that were being installed in the Plant Services vehicles. In his deposition, Plaintiff contended that he believed that GPS monitoring was being used in a discriminatory manner and that he complained to Jordan about it. (Pl.'s Dep. 181:2-24.) Plaintiff's contentions arguably give rise to a claim that he

_____

summary judgment. *See id.*

24

engaged in "stautorily-protected activity" when he complained to Jordan about the discriminatory effect of the GPS monitoring.

An employee engages in statutorily-protected activity when he opposes any unlawful discrimination. *See* 42 U.S.C. § 2000e-3(a). However, the employee must have "'a good faith, *reasonable belief* that the employer was engaged in unlawful employment practices.'" *Adams v. Cobb County Sch. Dist.*, 242 F. App'x 616, 621 (11th Cir. 2007) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Thus, a plaintiff "must show not only that he subjectively believed he was being discriminated against . . ., but also that his belief was *objectively reasonable* in light of the facts and record presented." *Id.* (internal quotation marks and citation omitted). "The objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Id.* (internal quotation marks and citation omitted) (alteration in original).

It is clear that Plaintiff subjectively believes that GPS is being used in a discriminatory manner to monitor his activities. However, even when examining the evidence in the light most favorable to Plaintiff, the present factual record does not support the conclusion that Plaintiff's belief was objectively reasonable. Although Plaintiff argues that the implementation of the monitor system was "personal" to him, he admits that other employees also had

monitors in their vehicles. (Pl.'s Dep. 183:6-15.) Plaintiff is unable to identify which vans had GPS and which did not. (Pl.'s Dep. 181:2-16.) The record also contains evidence that all vehicles were on a plan to have GPS installed and that this plan was explained to Plaintiff. (Tanksley Aff. ¶ 14.) Plaintiff therefore has no basis for his conclusion that the monitors were installed and/or monitored in a discriminatory fashion. Because it was objectively unreasonable for Plaintiff to believe that the installation of GPS was discriminatory, the complaints Plaintiff made with regard to their installation does not amount to statutorily-protected activity. Defendant is accordingly entitled to summary judgment to the extent Plaintiff bases his retaliation claims on the February 2007 reprimand.[12]

---

[12]In addition, Plaintiff has failed to demonstrate a causal link between the allegedly retaliatory written reprimand and the filing of his EEOC charges. A plaintiff may satisfy the causal link requirement "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas*, 506 F.3d at 1364. However, in the absence of other evidence demonstrating a causal link, "mere temporal proximity, without more, must be 'very close.'" *Id.* (citation omitted). A three to four month period between the date of the complaints and the date of the adverse employment action, without more, has been held insufficient to establish causation. *Id.* (holding that summary judgment was appropriate because plaintiff "failed to present evidence from which a reasonable jury could find any causal connection between her April 2005 complaint(s) of sexual harassment and the termination of her employment three (3) months later").

In this case, Plaintiff was reprimanded in February of 2007. His most recent EEOC complaint prior to that date was in March of 2006. Clearly, then, the requisite causal link cannot be provided by temporal proximity. As Plaintiff produces no other evidence linking the reprimand to any statutorily-protected activity, Plaintiff has also failed to establish his prima facie case on this ground.

Second, Plaintiff cannot make out a prima facie case of retaliation with respect to his reassignment to Masonry in December of 2005. In order to support a claim for retaliatory reassignment, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks and citation omitted). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 2417 (internal quotation marks and citation omitted).

Plaintiff here has pointed to no record evidence from which the Court could conclude that a reasonable employee would find Plaintiff's reassignment to be materially adverse.[13] While reassignment to a job that could aggravate an existing injury might

---

[13]The record indicates that Plaintiff complained both that his assignment to light duty and his reassignment to his ordinary duties were discriminatory and/or retaliatory. (*See, e.g.*, App. 5A, 5B, & 7 to Def.'s Mot. for Summ. J.) This apparent equivocation caused substantial confusion among Plaintiff's supervisors and physicians. (*See, e.g.*, App. 40 to Def.'s Mot. for Summ. J. (Plaintiff's physician observed in January of 2005 that "at one point I had released [Plaintiff] to his normal job and then he came back in saying he could not do it and wanted to go back out [under his work restrictions]. He just changes his mind back and forth and is not making a lot of sense about the whole thing."); *see also supra* note 4.)

arguably be retaliatory, Defendant in this case fully accommodated Plaintiff's two-percent impairment rating. (*See* App. 36 to Def.'s Mot. for Summ. J.) To ensure that Plaintiff could perform his usual Masonry duties safely, Defendant received clearance from Plaintiff's physicians, an additional MRI, and an additional work restriction evaluation before reassigning Plaintiff to Masonry in a "helper" capacity. In sum, Plaintiff has failed to show that his reassignment "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 126 S. Ct. at 2415 (internal quotation marks and citation omitted). Because Plaintiff cannot establish this element of his prima facie case, Defendant is entitled to summary judgment on this claim as well.

CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 17) is granted as to each of Plaintiff's claims. IT IS SO ORDERED, this 20th day of March, 2008.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

28